# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs December 7, 2010

## STATE OF TENNESSEE v. RODNEY MCALISTER

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 8506     Joseph H. Walker, III, Judge**

---

**No. W2010-00996-CCA-R3-CD  - Filed June 7, 2011**

---

The defendant, Rodney McAlister, was convicted by a Lauderdale County jury of vandalism between $1000 and $10,000, a Class D felony.  He was thereafter sentenced to a term of five years, as a multiple offender, in the Department of Correction.  On appeal, the defendant challenges only the sufficiency of the evidence, asserting that the State failed to negate the defenses of duress and necessity.  Following review of the record, we conclude that the evidence is sufficient and affirm the conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Gary F. Antrican, District Public Defender (on appeal), and Stephen Lefler, Memphis, Tennessee (at trial), for the appellant, Rodney McAlister.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; D. Michael Dunavant, District Attorney General, and Joni Livingston and Julie Pillow, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The evidence, in the light most favorable to the State, established that the defendant was incarcerated at the West Tennessee State Penitentiary on December 7, 2008.  The defendant, after kicking his cell door, managed to escape the cell and was free inside the pod.  The defendant was seen smashing the cameras by the control room and proceeded to climb into the ceiling, after breaking several of the ceiling tiles.  The defendant continued on his

rampage, breaking another camera, knocking out lights, and breaking a sprinkler head. Officers in the pod ordered the defendant to come down from the ceiling, and he responded that he would when he was finished. The defendant did eventually come down from the ceiling, and, upon reaching the ground, he ran back into his cell. The entire episode was captured on video.

Based upon these actions, the defendant was indicted by a Lauderdale County grand jury for one count of vandalism between $10,000 and $60,000. At the subsequent trial, the defendant proceeded upon the theory that he had committed the acts under duress or necessity, claiming that he was being abused by the prison officers and was only trying to get the attention of someone who could stop the treatment. The defendant testified and stated that the problems began when he got into an argument with an officer at the prison. He claimed that the officers then began "messing" with his food, sometimes even depriving him of anything to eat. He testified that he would be given food which had dirt, cleaning solvents, or pubic hairs in it. He related that he went on a "hunger strike" to draw attention to the alleged abuse. The defendant testified that he became weak from lack of food and that the officers attempted to take him to the prison physician. When he refused to go, the defendant related that the extraction team was called to remove him from his cell. He alleged that on multiple occasions during these extractions, he was beaten, dragged down stairs, and returned to his cell unconscious. He also contended that he was denied privileges such as showers and recreation time and that he was written up for infractions which he did not commit.

According to the defendant, he wrote the warden on multiple occasions concerning this abuse, but he received no aid. He stated that he feared for his safety and came up with the idea to destroy property in order to force officials to recognize his plight. He acknowledged that, prior to the incident, he destroyed two cells for which he was now charged. He claimed that on the day in question, the officer in the control room, who controlled the doors to the cells, began taunting him that he could not get out. The defendant claimed that this officer released the electronic lock and dared him to try to get out, despite the fact that the deadbolt lock was still in place. The defendant acknowledged that he then burst through the door, breaking the lock, and then committed the acts of vandalism for which he was charged.

In support of his defense theory, the defendant also called three other inmates to testify. Each gave testimony supporting the defendant's allegations of abuse at the hands of the prison officers.

The State called multiple officers to testify who were on duty when the defendant committed his rampage. Each testified that when the defendant burst from his cell, nothing

in his demeanor indicated that he was afraid or had been threatened in any way. Each of the officers also testified that they never witnessed or saw any abuse of the defendant, that his food was not tampered with, and that he was not denied privileges. Additionally, no officer was able to testify exactly how the defendant had gotten out of his cell. The control officer specifically testified that she did not release the lock for his door. Testimony was also elicited that the amount of damage to property caused by the defendant's actions was $14,313.62.

The State also called the warden to testify at the defendant's trial, although at the time of the incident he had been the deputy warden. He testified that he had received two letters from the defendant prior to this incident. In each of the letters, the defendant demanded that he be transferred to another prison, asserting that he wanted to be closer to Knoxville, and he set a deadline for the transfer to occur by December 1. The warden testified that he attempted to have the defendant transferred but was unable to find an institution willing to accept him. In the letters, the defendant also demanded that a disciplinary action be taken off his record because it was a "lie." The warden further testified that neither letter mentioned any abuse or improper treatment at the hands of prison officials. The warden also testified that when he engaged the defendant in conversation in the pod, he did not recall any mention or allegations of problems with the defendant's food.

After hearing all of the evidence presented at trial, the jury returned a verdict of guilty to the lesser included offense of vandalism valued between $1000 and $10,000. On December 18, 2009, he was sentenced to five years, as a multiple offender, in the Department of Correction. No motion for new trial was filed in the case by counsel nor was a timely notice of appeal filed. On February 17, 2010, the defendant filed a "Motion for Appointment of Counsel for a Belated Direct Appeal." The trial court thereafter appointed the Public Defender's Office for the purpose of filing an appeal on the issues of sufficiency and sentencing, as those were the only issues not waived by the failure to file a motion for new trial. As directed, counsel thereafter filed a notice of appeal to this court on May 5, 2010.

**Analysis**

As an initial matter, the State argues that the appeal should be dismissed based upon the defendant's failure to file a timely notice of appeal. There is no dispute in this case that no motion for new trial was ever filed nor was there a timely-filed notice of appeal. However, the defendant did file a motion requesting an appeal based upon his trial counsel's failure to perfect the appeal as he had been instructed.

Based upon the facts before us, as noted by the trial court, the defendant was precluded from appealing any issues other than sufficiency or sentencing based upon the

failure to file a motion for new trial. *See State v. Boxley*, 76 S.W.3d 381 (Tenn. Crim. App. 2001). As the defendant has raised only the issue of sufficiency, it is not necessary to address the relevant law and waiver of all other issues based upon that failure. However, the State is correct that the issue of an untimely notice of appeal must be addressed.

Pursuant to Tennessee Rule of Appellate Procedure 4(a), a notice of appeal "shall be filed with and received by the clerk of the trial court within [thirty] days after the date of entry of the judgment appealed from[.]" Again, there is no dispute in this case that the defendant failed to comply with this rule. However, it has been established that the untimely filing of a notice of appeal is not always fatal to an appeal. *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). Rule 4(a) states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *Rockwell*, 280 S.W.3d at 214. Waiver is not automatic and should only occur when "the interest of justice" mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction. *Id*.

The State, relying upon *State v. Ronnie Edward Sexton*, No. E2009-00292-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Oct. 6, 2010), asserts that the interest of justice does not mandate review in this case. The State argues that, just as in *Sexton*, the brief filed by the defendant contains no explanation as to why the notice of appeal was late-filed. However, while the brief contains no such information, the defendant, through appointed counsel, did file a "Motion to Allow Late Filed Notice of Appeal" with this court. In fairness to the State, we note that this motion was filed after its brief. In the motion, which was deferred for consideration by the panel assigned to hear the case, the defendant put forth the chronology of events which led to the late filing. He stated that: his trial counsel was contacted by his mother to see if the appeal process had been started; trial counsel continued to represent the defendant at sentencing; a notice of withdrawal was filed by trial counsel; trial counsel was not given leave to withdraw by the court; the notice of withdrawal was not communicated to the defendant; and the defendant was under the assumption that the appeal had been filed. The record further establishes that, once he became aware of the facts, the defendant promptly took the appropriate actions to remedy the situation. On these facts, we conclude that the interest of justice mandates against dismissal of the appeal and elect to review the single issue raised by the defendant.

On appeal, the defendant has raised the single issue of sufficiency of the evidence, asserting only that the State failed to negate the defenses of duress and necessity beyond a

reasonable doubt. When an accused challenges the sufficiency of the convicting evidence, the standard of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Goodwin,* 143 S.W.3d 771, 775 (Tenn. 2004); *see also* Tenn. R. App. P. 13(e). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith,* 24 S.W.3d 274, 279 (Tenn. 2000). Questions involving the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and an appellate court does not reweigh or re-evaluate the evidence. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in favor of the State. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). "Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules are applicable to findings of guilt predicated upon the direct evidence, circumstantial evidence, or a combination of both. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

As previously noted, the defendant does not challenge that the State proved all the elements of the crime of vandalism beyond a reasonable doubt. Rather, his entire sufficiency argument centers around his allegation that the State failed to negate the raised defenses of duress and necessity. We agree that the proof sufficiently establishes the elements of vandalism, defined by statute as "[a]ny person who knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent is guilty of . . ." vandalism. Clearly, these statutory elements are met by the proof which was presented. The prison guards offered testimony, the event was captured on video, and the defendant admitted that he forced open the door of his prison cell and went on a destructive rampage. In the process, he destroyed the door locks, cameras, ceiling tiles, light fixtures, and a sprinkler head. Testimony was given that the amount of damage totaled more than $14,000. Thus, we conclude that the elements of the crime were established by the State's proof.

It was acknowledged that the defendant did, in fact, raise the defenses of duress and necessity at trial and that the jury was instructed accordingly. The defendant is correct in his assertion that it is the State who bears the burden of negating these defenses beyond a reasonable doubt once they have been fairly raised by the proof. *See* T.C.A. § 39-11-

201(a)(3) (2011). Pursuant to Tennessee Code Annotated section 39-11-504(a) (2011),

> Duress is a defense to prosecution where the person or a third person is threatened with harm that is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety.

> Further, the desirability and urgency of avoiding the harm must clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

Tennessee Code Annotated section 39-11-609 (2011) defines necessity as:

> Except as provided in [sections] 39-11-611, 39-11-616, 39-11620, and 39-11-621, conduct is justified if:
>
> (1)   The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and
>
> (2)   The desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

The defendant argues that the proof he put forth, namely his own testimony and the testimony of the three inmates he called, established that he was in imminent danger based upon the injuries he had received and the starvation he experienced at the hands of the officers. According to his argument, because he had previously been denied aid, he felt that he had no choice but to commit the acts to bring attention to his plight. While we agree that the defendant did put forth sufficient evidence to raise the defenses, his argument ignores that all of the relevant information was placed before and evaluated by the jury. The jury was free to weigh and assess the credibility of the witnesses, and, as noted on multiple occasions, it is not the province of this court to reweigh such determinations.

The State called multiple prison officers, as well as the warden, and testimony established that no one was aware of any abuse toward the defendant. The warden, in contradiction to the defendant, testified that no reports of starvation or abuse had been made to him. Each of the officers testified that the defendant burst out of his cell, in stark

contradiction to his own testimony that he was weak from starvation, and that he exhibited no sign of fear while destroying the property of the prison. Based upon this evidence and a clear credibility determination by the jury, we must conclude that the State did, in fact, negate the raised defenses of duress and necessity. As such, the defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing, the judgment of conviction is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE